```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          |
ANDRE HEMRAJ                                              |
                                                          |
                Plaintiff,                                |
                                                          |   NOT FOR PUBLICATION
           -against-                                      |   **MEMORANDUM & ORDER**
                                                          |
FEDERAL EXPRESS CORPORATION                               |   06-CV-5414 (CBA)
d/b/a FEDEX                                               |
                                                          |
                Defendant.                                |
                                                          |
----------------------------------------------------------X
```

AMON, United States District Judge

Plaintiff Andre Hemraj has filed suit against his former employer, defendant Federal Express Corporation ("FedEx"). Hemraj claims that his dismissal by FedEx breached an implied employment contract between the parties and that he has suffered a loss of reputation from FedEx's conduct. The defendant has moved for summary judgment and sanctions. For the reasons set forth below, defendant's motion for summary judgement is granted. Defendant's motion for sanctions is denied.

**I.     Background**

Hemraj was hired as a Cargo Handler by FedEx in January of 1994 and continued to work at FedEx until his termination in July of 2006. Hemraj was promoted from Cargo Handler to Courier after three years, from Courier to Station Lead after five years, and finally, from Station Lead to Operations Manager after two years. He served as an Operations Manager for two years prior to his termination.

When Hemraj began his employment with FedEx in 1994, he signed an Employment

1

Agreement. (Hemraj Dep. at 51-57.) The Employment Agreement stated, *inter alia*, that Hemraj understood his employment was indefinite and at will, he agreed that his employment could be terminated without cause, notice, or liability, and that no manager or representative of FedEx, other than the Chief Executive Officer or Senior Vice President, could enter into an employment agreement with him. (Hemraj Dep. Exh. 8.) Additionly, in March of 1994, Hemraj received a copy of the 1993 Federal Express Employee Handbook ("Handbook"). (Id. at 65, Exh. 6a.) Hemraj signed a receipt form for the Handbook, which stated that the "Handbook should not be considered a contract of employment, nor should [its] provisions be read or implied to provide one." By signing the form, Hemraj acknowledged that the Handbook "contain[ed] guidelines only." (Id.) FedEx distributed updated editions of the Handbook to its employees in 1996 and 2002. The 2002 version of the Handbook included an additional clause stating that:

> No manager or representative of [FedEx], other than the CEO or Senior Vice President designated by the CEO, has any authority to enter into any agreement modifying this publication in any way, or to enter into an agreement of employment with you for any specified period of time. Any amendment or agreement if made shall not be enforceable unless it is in writing and signed by you and the CEO or designated Senior Vice President.

Hemraj recalls receiving all three versions of the Handbook and signing receipts for the 1993 and 1996 versions. (Hemraj Dep. at 31, 64-68, Exh. 6a, 6b, 6c.)

Hemraj was also aware of a FedEx publication entitled the Federal Express Personnel Policy and Procedural Manual (" Manual"), and occasionally consulted it during the course of his employment. (Hemraj Dep. at 125.) The Manual outlined FedEx's procedures on appealing internal decision-making, entitled the Guaranteed Fair Treatment Procedure ("GFTP"). The 2006 version of the Manual, which was reviewed by Hemraj while he worked as an Operations

2

Manager (Hemraj Dep. at 126-27), also included a provision stating that:

> This manual is intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing in this manual shall be construed to abrogate the employment agreement signed up on application for employment preserving the Company's and employee's right to terminate this relationship at the will of either party. . . . All amendments to this manual shall be made solely by the chief executive officer (CEO) or other senior officer designated such authority.

(Nesbit Decl. ¶ 6.)

Hemraj claims that during his time as a manager, despite the provisions in the Manual and Handbook, he was told by his supervisors that no one could be fired without cause. (Pl. Rule 56.1 Statement ¶ 5.) He also asserts that he participated in management training seminars where he was instructed to discipline and dismiss employees in accordance with FedEx's corporate written policies, including the GFTP, and any verbal assurances the employees may have relied upon. (Id. ¶ 6.)

On July 1, 1999, Hemraj received a company memo from management reminding employees that falsification of records was an offense that could lead to discipline and termination. (Hemraj Dep. at 70-72, Exh. 10; Cates Decl. ¶ 14.). On March 1, 2005, Hemraj's manager, George Thomas, sent Hemraj a memo instructing him to review the changes to FedEx's policy regarding falsification, which he did. (Hemraj Dep. at 73-74, Exh. 11a; Cates Decl. ¶ 15.)

Hemraj's employment with FedEx was terminated on July 10, 2006 for leadership failure. FedEx asserts that Hemraj was terminated because he failed to cooperate with a security investigation into inappropriate computer entries ("DEX 8 scans") made in violation of FedEx policy. (Def. Rule 56.1 Statement ¶¶ 12-13.) Samuel Nesbit, Hemraj's managing director, had been informed of policy violations at Hemraj's station and investigated the matter with his

3

security team. The investigation revealed that two FedEx employees had entered codes into FedEx computers allowing them to alter delivery times. FedEx asserts that when these employees were questioned by security, they claimed to have been directed by Hemraj and another manager to enter the codes. (Nesbit Dep. at 34-48.) Security interviewed Hemraj, who declined to write or sign a written statement relating to his testimony. In accordance with a FedEx policy stating that failure to cooperate with a security investigation may result in discipline, including termination, Hemraj was dismissed. While Hemraj appealed his termination through the three-step GFTP process provided for by the Manual, his termination was ultimately upheld by FedEx.

Hemraj disputes the findings of FedEx's security and management regarding his non-cooperation and involvement in the record falsification. He claims he did not direct his subordinates to falsify records and that his termination was without cause. In terminating him without cause, Hemraj argues that FedEx breached an implied employment contract that had formed based on the language of the Handbook and Manual, as well as oral representations on FedEx's termination processes made to Hemraj by his superiors. Hemraj also claims that he has suffered a loss of reputation from FedEx's conduct.

**A.     Discussion**

　　**1.     Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve

disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir.2001) (non-moving parties "may not rely on conclusory allegations or unsubstantiated speculation") (internal quotation marks omitted). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### 2. Breach of Contract

New York has a well-established at will employment doctrine: "[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Sabetay v. Sterling Drug Inc., 69 N.Y.2d 329, 333 (N.Y. 1987); see also Baron v. Port Authority of New York and New Jersey, 271 F.3d 81, 85 (2d Cir. 2001). In order to rebut the presumption of at will employment, a plaintiff must establish an "express limitation" curtailing an employer's right to terminate. Baron, 271 F.3d at 85; Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 851 (2d Cir. 1985).

Policies in a personnel manual specifying termination grounds and procedures may become part of an employment contract, rebutting a presumption of at will employment. See

5

e.g. Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 87-89 (2d Cir. 1998). To establish that such polices are part of an implied contract for employment, an employee must prove that (1) an express written policy limiting the employer's right of discharge exists; (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and; (3) the employee detrimentally relied on the policy in accepting or continuing employment. See Lobosco v. New York Tel., 96 N.Y.2d 312, 316 (N.Y. 2001); Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001). The New York Court of Appeals has noted that this is a difficult burden to meet: "[r]outinely issued employee manuals, handbooks, and policy statements should not lightly be converted into binding employment agreements." Lobosco, 96 N.Y.2d at 317.

In this case, Hemraj's contract claim fails because he has not identified any express, written limitations on FedEx's rights to discharge its employees. Although he asserts that he relied on the FedEx Handbook and Manual in concluding that employees could only be discharged for cause, he offers nothing from either document that could legitimately limit FedEx's right to terminate his employment. To the contrary, as discussed above, disclaimers in both the Handbook and Manual expressly disavow any intent on the part of FedEx to accept contractual limitations on its rights as an at will employer. Moreover, the FedEx employee publications at issue specify that any changes to an employee's at will status could only be effectuated upon execution of a writing signed by the CEO or his designated agent, and the employee. Hemraj has produced no evidence of such a writing that could have altered his at will employment status.

Hemraj's arguments in support of his claim are inapposite. He relies on Weiner v. McGraw-Hill, 57 N.Y.2d 458 (N.Y. 1982) and Marfia v. T.C. Ziraat Kankasi, 147 F.3d 83 (2d

Cir. 1998) to argue that a court may find an implied contract for employment upon consideration of "a totality of circumstances," including representations in employee manuals and publications. In both cases the company publications at issue specifically stated that the employer would only resort to dismissal or discipline for just cause. Weiner, 57 N.Y.2d at 460-61; Marfia, 147 F.3d at 88. Similarly, in Gorrill v. Icelandair/Flugleidir, the court's finding of an employment contract was based on written representations in an operations manual, stating that employee discharges would be based on seniority only. 761 F.2d at 850. The FedEx employee publications in the instant case, however, contained clear statements to the contrary, specifying that an employee could be dismissed at will. In disputes involving these kinds of straightforward disclaimers, the Second Circuit has noted that consideration of the totality of circumstances is not warranted: "Where a sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook such that the employee reasonably could be expected to read it is at issue, the totality of the circumstances inquiry is unnecessary; the implied contract claim may be dismissed as a matter of law." Baron, 271 F.3d at 88.

Hemraj also points to the Manual's language on FedEx's GFTP policy as evidence of a written limitation on FedEx's right to terminate employees at will. However, this language, on its own, cannot abrogate the express disclaimers in FedEx's publications. In considering this very issue, another court in this district has concluded that the GFTP language on internal FedEx processes did not constitute a written limitation on its right to terminate at will. Leahy v. Fed. Express Corp., 609 F.Supp.668, 672 (E.D.N.Y. 1985) ("For even if plaintiffs are correct that Federal [Express] violated the spirit and letter of the GFTP and did not give them the hearing to which they believed themselves entitled, nowhere in the record is there any indication of an

express limitation on Federal [Express]'s right to terminate, as required."). See also Baron, 271 F.3d at 87 ("Even if we were to agree with plaintiffs that [earlier Second Circuit case law] stands for the proposition that a disclaimer in an employee handbook, no matter how ambiguous, does not as a matter of law preclude a finding that the specific provisions of the handbook are express limitations, we would be compelled to conclude that any such holding is no longer good law.").

In addition, other district courts within the Second Circuit have repeatedly found that FedEx's Handbook and Manual do not give rise to an enforceable employment contract. See Aquinas v. Fed. Express Corp., 940 F.Supp. 73 (S.D.N.Y. 1996) (finding no implied contract where plaintiff failed to point to any limitation on FedEx's right of termination in its Manual and noting that, "even if the handbook policies . . . are liberally construed to be limiting provisions, they cannot contractually bind FedEx, as a matter of law, in the absence of substantial evidence that FedEx intended to limit its rights and that [plaintiff] actually relied on the contents of the handbook"); Cowen v. Fed. Express Corp., 25 F.Supp.2d 33, 37 (D.Conn. 1998) ("Federal Express's employee manuals *do not* give rise to an enforceable contract.").

Hemraj attempts to distinguish this considerable body of case law by claiming that because he was a manager, and utilized FedEx's publications in overseeing others, his understanding of those publications may give rise to an implied contract. Hemraj's position is unsupported. In Cowen v. Federal Express Corp., the plaintiff was a manager at Federal Express who administered the policies and procedures set forth in the Manual. 25 F.Supp.2d at 37. The court held that plaintiff's reliance on his understanding of FedEx's publications did not give rise to a contract of employment and, in fact, that plaintiff's managerial position should have made him "exceedingly familiar" with provisions in the Manual that disclaimed contractual liability.

8

Id. at 37. Similarly, the plaintiffs in Baron, cited by Hemraj in his papers, were "four former managerial employees"; the court, nevertheless, found that disclaimers in company publications barred the creation of an implied contract. 271 F.3d at 83.

Finally, Hemraj attempts to rely on oral representations made to him by his manager, Samuel Nesbitt, and other supervisors, arguing that these assurances created a contractual obligation on the part of FedEx. This reliance is also misplaced. "General statements about job security and even an oral representation that employees [can] not be fired without just cause" do not necessarily give rise to an implied contract for employment. Leahy, 609 F.Supp. at 672. Moreover, oral assurances do not create a limitation on an at will employer's right of termination absent additional evidence that an employee had a contractual relationship with an employer. Fitzgerald v. Martin-Marietta, 256 A.D.2d 959, 960 (App. Div. 3d Dep't 1998) ("oral assurances alleged by plaintiff cannot of themselves give rise to a triable question of fact" as to the existence of a contractual relationship); see also Loksen, 239 F.3d at 264-65; Baron, 271 F.3d at 85 n.2 (citing Skelly v. Visiting Nurse Assoc. of Capital Region, Inc., 210 A.D.2d 683, 684 (App. Div. 3d Dep't 1994)). Hemraj has not provided the additional, required evidence of a contract in this case. Therefore, even if FedEx managers made representations to Hemraj about his job security, those assurances did not give rise to an implied contract for employment.[1]

Although Hemraj disputes the events leading to his dismissal, and the conclusions

---

[1] Hemraj's reference to statements made by Mr. Nesbit during his deposition testimony as evidence of an implied contract is not persuasive. Although Mr. Nesbit stated that, in his view, an employee at FedEx cannot be fired for "no reason at all" (Nesbitt Dep. at 148:23-25), Mr. Nesbitt's understanding does not, on its own, create a contractual obligation on the part of FedEx and, as discussed above, is trumped by the clear disclaimers included in FedEx's employee publications.

reached by FedEx managers, the factual circumstances underlying FedEx's decision to terminate Hemraj are not salient to this motion absent a contract for employment which, for the reasons discussed above, Hemraj did not have. Accordingly, defendant's motion for summary judgment on plaintiff's claim for breach of contract is granted.

### 3. Loss of Reputation

Hemraj also brings a claim for loss of reputation, alleging that his professional reputation has been irreparably harmed by FedEx's conduct. New York, however, generally does not recognize a cause of action for loss of reputation arising from a breach of contract. See Bisk v. Soko, Ltd., No. 98-cv-184, 2000 WL 974271 (N.D.N.Y. July 7, 2000) (citing Dember Constr. Co. V. Staten Island Mall, 56 A.D.2d 768 (App. Div. 1st Dep't 1977)). Under New York law, cases providing recovery for a loss of reputation stemming from a contract dispute "carefully limit such claims by requiring the plaintiff to allege specific business opportunities lost as a result of plaintiff's diminishing reputation." I.R.V. Merchandising v. Jay Ward Prod., 856 F.Supp.168, 175 (S.D.N.Y. 1994). As Hemraj has not demonstrated a breach of contract, he cannot claim any damages for a loss of reputation from a contract dispute.

To the extent that Hemraj asserts a claim for damage to his reputation arising independently from an alleged contract with FedEx, there is no independent action for loss of reputation in New York. Baum v. Phillips, Appel & Walden, Inc., 648 F.Supp.1518 (S.D.N.Y. 1986) (citing Terry v. County of Orleans, 72 A.D.2d 925 (App. Div. 4th Dep't 1979)). Rather, a claim for damage to a personal or business reputation is addressed through other specific causes of action such as defamation, libel, or slander. Hemraj has failed to allege the necessary elements of any of these causes of action. Accordingly, defendant's motion for summary

judgment for plaintiff's claim of loss of reputation is granted.

    **4.     Rule 11 Sanctions**

Defendant has also moved for sanctions against Hemraj and his counsel under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides that legal contentions must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. Rule 11(b)(2). "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir.1994) (internal quotation marks and citations omitted). Although the Court recognizes the considerable body of case law in opposition to Hemraj's arguments, it does not find that his contentions rise to the level of frivolity required by Rule 11. New York courts have made findings of implied contracts of employment in the past, albeit in circumstances distinguishable from the instant case. The Court, therefore, denies defendant's motion for Rule 11 sanctions but advises plaintiff's counsel to take greater care in filing future claims involving these legal issues.

## CONCLUSION

For the reasons set forth herein, the defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
October 25, 2007

Carol Bagley Amon
United States District Judge